THOMPSON v. RAILWAY EXPRESS AGENCY et al.

No. 11928.

Court of Civil Appeals of Texas. Galveston.

Nov. 13, 1947.

Rehearing Denied Dec. 4, 1947.

Helm & Jones and W. J. Kronzer, Jr., all of Houston, for appellant.

Wm. C. Harvin, III, and Tom M. Davis, both of Houston (Baker, Botts, Andrews & Walne, of Houston, of counsel), for appellees.

CODY, Justice.

This was an action brought by appellant against appellee Railway Express Co., Inc., and one of its truck drivers, appellee L. J. Stringer, to recover damages she sustained when she and a truck belonging to the Express Company, driven by Stringer, collided. The collision occurred at the intersection of Texas Avenue and San Jacinto Street, in Houston. Appellant was crossing Texas Avenue on foot when the accident occurred.

From an adverse judgment, appellant prosecutes her appeal on two grounds, (1) jury misconduct, and (2) an irreconcilable conflict in the answers of the jury to special issues.

We must overrule appellant's first point, urging jury misconduct. In paragraph VIII, of her amended motion for new trial, appellant alleged jury misconduct in these terms:

"Plaintiff would further show that jury misconduct was committed in the jury room when the statement was made by some one or more of the jurors and relied on by one or more of the other jurors to the effect that so long as damages were found by the jury, the plaintiff would get money, if the defendant were found negligent and that it would not cause her to lose the case, if the issues on contributory negligence such as lookout and proximate cause were answered against her. The juror or jurors who relied upon this statement believed this statement to be true and that the only reason that they were prevailed upon to change their answers from 'no' to 'yes' on Special Issues Nos. 19 and 20, was because they believed from the evidence and by the testimony that this young woman did keep a proper lookout at all times, from all sides and from all places, and they relied on this erroneous statement of the law and were prevailed on to change their answers upon the belief that, because all the other questions had been answered favorably to the young woman that she would recover and that the contributory negligence findings were immaterial."

To appellant's above-quoted allegations of jury misconduct, appellees specially excepted on the grounds, (a) that said allegations were so vague as to merely constitute a fishing expedition on the issue of jury misconduct, "in that said motion wholly fails to set forth the name or names of the juror or jurors who are alleged to have committed the said acts complained of, or the name or names of the jurors who were present when said alleged statements were made and heard the same and relied thereon"; (b) "said motion does not have the affidavits, or copies of affidavits, of any jurors attached in support of said alleged misconduct and said motion wholly fails to set forth any excuse for not attaching affidavits of one or more jurors in support of said allegations, and consequently said motion is wholly insufficient in this respect."

Appellant, by raising the issue of jury misconduct, was invoking the application of Rule 327, Texas Rules of Civil Procedure. In Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 483, 163 S.W.2d 644, 646, the Supreme Court adopted standards for determining whether allegations of jury misconduct were sufficient to require the judge to try the issue of jury misconduct which it was alleged took place outside of the presence of said presiding judge. The court there stated, in effect, that (1) the affidavits showing such jury misconduct should be attached to the motion for new trial, (2) or said motion should disclose a reasonable explanation or excuse for the failure to have such affidavits so exhibited; "but", continued the court, "in the absence of such affidavits or a reasonable excuse for not exhibiting the same, a refusal to hear testimony from the jurors on the motion is a matter within the sound discretion of the trial judge."

Upon the hearing on the motion for new trial appellant called certain of the jurors to testify on the issue of jury misconduct. Appellees thereupon objected to the jurors being heard upon the same grounds as that set forth in their special exceptions to appellant's allegations of jury misconduct. Said objection to the testimony sought to be elicited by appellant, was an invocation by appellees of the ruling made in the Murphy case, supra, to the end that the standards adopted by the Supreme Court in the Murphy case be applied for the purpose of preventing appellant from embarking on a "fishing expedition" to uncover evidence of jury misconduct. The trial court sustained appellees' objection to such testimony. Whereupon appellant excepted, and, for the purpose of her bill of exceptions only, the court permitted the jurors to be examined and cross-examined.

The ruling in the Murphy case was made at a time the bench and bar labored under uncertainty and confusion between whether, in charging jury misconduct which occurred out of the presence of the court, the strictness of the common-law rule which required matter dehors the record be made to appear by affidavit, should be employed, or whether the laxity of pleading, which would permit a losing litigant to conduct a "fishing expedition" on the chance he might uncover jury misconduct, could be used in alleging such jury misconduct. It is immaterial whether, in the Murphy case, the movant was there held, upon easier terms, to have demonstrated that he had knowledge that misconduct had occurred, and to have given an adequate guaranty of good faith in making the charge, than the terms prescribed by the ruling in the Murphy case, for future cases. In any case, it was made to appear in the Murphy case that the movant in that case could have qualified under the standards there prescribed, and it was held that the trial court abused his discretion in not hearing the testimony, because the movant had named the jurors, exhibited their written, though unsworn statements, and produced for the hearing said jurors to prove said statements.

But here appellant, in the light of the ruling in the Murphy case, and in disregard of appellees' special exceptions seeking to require a compliance with such ruling, failed to comply with the prescribed standards. The court's refusal to hear testimony of misconduct was clearly a matter involving the exercise of a sound judicial discretion, within the ruling in the Murphy case.

For the purposes of her bill of exceptions to the court's refusal to hear their testimony, the court permitted the eleven jurors who were summoned to be examined and cross-examined. Such testimony can be considered only for its bearing on whether the court's refusal constituted an abuse of discretion. At the hearing so held for the purpose of appellant's bill of exceptions, one of the jurors, a Mr. Cherry, testified: That there was considerable argument about the answer to Special Issue No. 19, the "proper look-out" issue. That he finally changed his answer thereto to "Yes", and he testified that while he was holding out on the issue, "Well, the statement was made when I was holding out on the question, that they would take our findings, and base it on our findings, and award the girl her suit." He further stated he would never have given in if he hadn't believed the statement he heard in the jury room, and believed the girl would have a judgment for damages. In response to questions by the court, Mr. Cherry testified that he answered the special issues based on the evidence, and stated that he came over to the majority on the answer to special issue No. 19 "to get it over with, I guess." The court then asked him, "I want you to answer this question to the best of your ability: Did you try to answer that issue from the evidence, or because you didn't think it would make any difference at all, and wouldn't affect giving a judgment to this woman?" To which the juror answered, "According to the evidence presented at the trial." Each of the other jurors present denied that he made the statement testified to by Mr. Cherry, and denied having heard any other juror make it.

It would have been no abuse of discretion had the court refused to set aside the verdict upon the testimony reflected by the bill. Nor do we think that the jurors' testimony was sufficient to make a showing such as reflects that the court abused his discretion in refusing to hear same on appellants amended motion for new trial.

Appellant's second point urges that there was an irreconcilable conflict btween special issues Nos. 19 and 20, as answered by the jury, on the one hand, and special issues Nos. 23 and 24, as answered by the jury, on the other.

Special Issue No. 19 was answered "Yes" by the jury. It reads: "Do you find from a preponderance of the evidence *that at the time and on the occasion in question Mrs. Thompson attempted to cross south on Texas Avenue without keeping a proper look-out for approaching traffic?*" (Emphasis supplied.)

Special issue No. 20, as answered, found such failure was a proximate cause of Mrs. Thompson's injuries.

Special issue No. 23 was answered "Yes", and reads: "Do you find from a preponderance of the evidence *that immediately before the collision with the truck, Mrs. Thompson was looking back over her left shoulder?*" (Emphasis supplied.) Special Issue No. 24, as answered, found such act was not negligent.

The facts and circumstances to which the answers to the foregoing special issues were responsive were in substance:

That Texas Avenue is wide and carries heavy traffic, having six traffic lanes, three of which are eastbound traffic lanes, and three of which are westbound. On the occasion in question appellant attempted to cross Texas Avenue as a pedestrian at its intersection with San Jacinto Street, from the north side of Texas Avenue to its South side. The westbound traffic lanes were of course on the northerly portion of the Avenue. Appellant never reached the eastbound traffic lanes. The collision occurred in the third, or southern most west traffic lane.

That at the time appellant started to cross, she looked and saw that she had a green light. A westbound bus was standing in the first westbound traffic lane—the lane nearest the north curb, when appellant started crossing. In the next traffic lane two cars were standing— heading west, of course— one behind the other. In the third westbound traffic lane the express truck in question was approaching the intersection with San Jacinto Street, but its approach was not observed by appellant. Appellant first passed in front of the standing bus, and was passing in front of the first car which was standing in the second lane, when said car started up. This caused her to look back over her left shoulder to watch it, to avoid being hit. While so engaged she walked into the side of the express truck in the third lane which had been approaching the intersection at all material times. The evidence showed that until her attention was diverted by the car in the second lane, she was looking straight ahead, and that she was proceeding at a dogtrot.

"The courts of this state have uniformly held that apparent conflicts in the jury's answers to special issues submitted should be reconciled, if this can be reasonably done in the light of the facts in a particular case, the pleadings and evidence, the manner in which the issues were submitted, and in view of the other findings when considered as a whole, and that findings on ultimate facts will control those on merely evidentiary issues, and that specific findings will control general ones, and that, if, upon a reasonable interpretation of the findings, it appears that they are not in real and irreconcilable conflict, they then form the proper basis for judgment. Aranda v. Texas & N. O. Ry. Co., Tex.Civ.App., 140 S.W.2d 236, 240; Graham v. Hines, Tex. Civ.App., 240 S.W. 1015; Bragg v. Hughes, Tex.Civ.App., 53 S.W.2d 151; First National Bank v. Rush, Tex.Com. App., 246 S.W. 349; 41 Tex.Jur. 1224." Walker v. Houston Electric Co., Tex.Civ. App., 155 S.W.2d 973, 975, writ refused.

Special Issue No. 19, which asked if appellant was keeping a proper look-out for traffic approaching from her left while attempting to cross south on Texas Avenue, encompasses her actions while so doing. As appellees state, it covers her actions as she left the curb; as she passed the bus;

and as she passed the car which was in the second lane; as well as when she looked over her left shoulder and walked into the express truck. Special Issue No. 23 is not so comprehensive, it covers only that part of her actions while she was looking over her left shoulder, "immediately before the collision." This act of looking over her left ˙shoulder by appellant took place only while she was passing or had passed the car in the second lane, when it started up. Her negligent failure to keep a proper look-out for traffic approaching from the left had thus continued from the time she left the curb until she was, or conceived she was in a position of peril from the car in the second lane, when it started up. The Special Issues involved may be reasonably reconciled upon assuming the jury conceived that, had appellant been keeping a proper lookout for the westbound traffic she would not have been in the situation to have been startled when the car started up,—would not have been confronted with an emergency.

▆ In other words, the special issues, which were answered so as to produce an apparent conflict, may be reconciled on the ground that the jury found in answer to Special Issues Nos. 19 and 20, that the collision was due to the negligence of appellant in failing to keep a proper lookout for westbound traffic; whereas, they found she was not negligent in looking over her left shoulder to avoid or watch a car that had just started up after she found herself in a position of peril or emergency, which was itself due to failure to keep a proper lookout. See Walker v. Houston Electric Co., Tex.Civ.App., 155 S.W.2d 973. We overrule appellant's second point.

The judgment is affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

We agree with appellant's abstraction "that a holding to the effect that affirmative conduct by a pedestrian which is not negligence can at one and the same time be considered negligent conduct is without support in logic or law."

By "affirmative conduct by a pedestrian which is not negligence", appellant is referring to the jury's finding that her act in looking over her left shoulder, "immediately before the collision", was not negligent. We did not hold in our original opinion that it was negligent. We held that not even an apparent conflict with Special Issue No. 19 was posed by Special Issue No. 23, with reference to Mrs. Thompson's acts before she was looking over her left shoulder, "immediately before the collision."

To us it is quite evident from the record in the case that the jury, in finding that Mrs. Thompson was not negligent in looking over her shoulder, believed that such act was done in obedience to the instinct of self-preservation. Naturally they found that an act done in response to so powerful an instinct was not negligent. Even so, such act was not effective to preserve her from the consequences of her negligent failure to keep a proper lookout, which had placed her in a position of peril. In other words, the jury in effect found that her conduct, looking to escape her peril, was not negligent, but they found that the proximate cause of her injuries was her failure to keep a proper lookout. Expressed otherwise, the jury found that her negligent failure to keep a proper lookout continued to operate, despite her unsuccessful but proper attempt looking to extricate herself, until it resulted in her injuries.

Motion for rehearing refused.