PAN AMERICAN FIRE & CASUALTY
COMPANY et al., Appellants,

v.

Herbert GREENBERG et al., Appellees.

No. 6870.

Court of Civil Appeals of Texas.

Amarillo.

June 8, 1959.

Rehearing Denied July 6, 1959.

McWhorter, Cobb & Johnson, Klett, Evans, Trout & Jones, Lubbock, for appellants.

Waggonseller & Cobb, Moore & Moore, Albert Smith, Lubbock, for appellees.

PITTS, Chief Justice.

Plaintiffs, Pan American Fire & Casualty Company and Baloise Fire & Marine Insurance Company, Ltd., and DeWitt Elmore dba DeWitt Elmore Motors, filed suit against defendants, Herbert Greenberg, Allstate Insurance Company and three other named defendants who, according to the record, were college students namely, Frederick Schoenfeld, Julius C. Frappollo and William Norris, seeking a declaratory judgment to establish non-liability on two similar "garage liability" policies issued separately by the insurance party plaintiffs, to DeWitt Elmore Motors, both of which policies were in force on December 21, 1956, when a 1953 Ford automobile furnished Herbert Greenberg for his use by DeWitt Elmore Motors was completely demolished on the said date by reason of a collision with another motor vehicle in the State of Oklahoma at which time the said 1953 Ford was being used by Herbert Greenberg and the other named college student defendants. The record reveals that prior to December 21, 1956, DeWitt Elmore Motors contracted with Herbert Greenberg to sell him a new 1957 Ford automobile at a fixed price of $2,215 with a deferred delivery of four to six weeks and that if Greenberg sold and gave possession of his 1955 Ford Automobile he then owned before DeWitt Elmore Motors could deliver to him the new automobile, then DeWitt Elmore Motors agreed in that event to furnish Greenberg a car to use as if it were his own until such time

as the new automobile could be delivered by Elmore; that Greenberg sold and delivered to the buyer his 1955 Ford before the new automobile was delivered to him by DeWitt Elmore Motors as a result of which DeWitt Elmore Motors furnished to Greenberg the said 1953 Ford for his use and it was while Greenberg was so using the said 1953 Ford under the agreement with DeWitt Elmore that the said 1953 Ford was demolished as a result of the said collision.

Each of the policies previously herein referred to contained the following Exclusion Clause: "This policy does not apply to any automobile while rented to others by the named insured." The plaintiffs claimed in effect that the said 1953 Ford automobile was being used by Herbert Greenberg under a rental agreement between himself and DeWitt Elmore for a valuable consideration when the same was demolished, for which reason the plaintiff insurers claim they are not liable for losses sustained by reason of the foregoing Exclusion Clause in each of the policies. While defendants Herbert Greenberg and Allstate Insurance Company contend in effect that the said 1953 Ford automobile had not been rented to Herbert Greenberg by DeWitt Elmore Motors but it had been loaned to Herbert Greenberg by DeWitt Elmore merely as an accommodation without consideration while Greenberg waited for delivery to him of the new automobile by Elmore and that the policies issued to Elmore by the plaintiff insurers had the primary coverage of the loss sustained by reason of the collision and that a policy issued by Allstate Insurance Company to Herbert Greenberg, as alleged by plaintiffs, was issued only to indemnify Greenberg against loss and provided excess coverage over and above the primary coverage provided by plaintiff insurers' policies.

Based upon their claims made, plaintiffs filed a motion for a summary judgment on March 5, 1958, and attached thereto copies of their policies here involved and an affidavit showing sworn statements made by Herbert Greenberg. Thereafter on April 3, 1958, defendants Herbert Greenberg and Allstate Insurance Company likewise filed a motion for a summary judgment and attached thereto Herbert Greenberg's affidavit to the effect that the 1953 Ford automobile in question was not rented to him by Elmore but was loaned to him by DeWitt Elmore Motors without any consideration for its use and also attached an affidavit showing other sworn statements previously made by Herbert Greenberg. On May 6, 1958, the trial court heard and overruled both motions for summary judgment, thus implying that there were material issues of fact to be heard in the case.

On August 4, 1958, before the case went to trial the same day to a jury, plaintiff DeWitt Elmore filed his motion for a dismissal of the suit as to him, without prejudice to the rights of any other party, which motion was sustained and the action as to him was dismissed by order of the trial court entered of the same date. The case then went to trial as to all other parties before a jury, to which only one special issue was submitted and that was submitted without objections or exceptions of any party to the suit. In answer to the one issue submitted, the jury found in effect that Herbert Greenberg had the implied permission of DeWitt Elmore to use the 1953 Ford automobile in question in making the trip in question when the said automobile was demolished in the State of Oklahoma. Based upon "The verdict of the jury and the evidence heard in the case," the trial court entered judgment decreeing that the policies issued by Pan American Fire & Casualty Company and Baloise Fire & Marine Insurance Company, Ltd., provided for primary coverage of losses sustained as set out therein and it also decreed that the policy issued by Allstate Insurance Company provided for excess coverage only as set out therein.

The plaintiff insurance companies perfected an appeal and will be hereafter referred to as appellants. They charge in three separate points that error was com-

mitted (1) because the trial court overruled their motion for an instructed verdict; (2) because the trial court overruled their motion for judgment non obstante veredicto; and (3) because the trial court rendered judgment for the defendants. In each of their three points presented, appellants contend that the uncontroverted evidence showed that Herbert Greenberg had rented the automobile in question from DeWitt Elmore Motors and was so using it at the time of the collision, for which reason they, as a matter of law, were not liable by reason of the provisions of the exclusion clause in their respective policies for losses sustained because the said automobile was rented to another by the insured. In fact, appellants state in their brief that:

"The question for determination by this Court is whether or not the use of the car for cash consideration brings it within the exclusion of the Baloise and Pan American policies which state 'this policy does not apply to any automobile while rented to others by the named insured.' "

In our opinion the controlling questions to be here determined are whether or not the uncontroverted evidence shows that DeWitt Elmore rented the use of the 1953 Ford automobile in question to Herbert Greenberg for an agreed consideration, as claimed by appellants, and if not, then whether or not the trial court was justified under the record before us in finding and concluding that the said automobile was not rented to Greenberg by Elmore.

Appellants likewise state in their brief that:

"It was the intent of the parties to the insurance contract that automobiles belonging to DeWitt Elmore, the named insured, should be covered while being driven by him or with his permission."

The jury found that Greenberg had the implied permission of Elmore to drive the Ford in question in making the trip in question and appellants have not attacked

or challenged that jury finding and since the issue was submitted without any exceptions or objections of appellants, they waived any right to attack it. However, if appellants' said statement last quoted correctly expresses the intention of the parties to the insurance contract, the finding of the jury furnished sufficient basis for rendering a judgment against appellants. But in any event we shall further examine the facts.

The uncontroverted evidence reveals that during the period of time in question Herbert Greenberg and wife resided in Lubbock, Texas where he was an assistant professor at Texas Technological College, that he was blind and was referred to as "Dr. Greenberg;" that he needed the use of an automobile daily and his wife usually drove their automobile for him but on the occasion in question she was not physically able to make the trip he planned to make and he took along with him four college students who planned to alternate in driving the automobile in question for him; that Frederick Schoenfeld was driving the said 1953 Ford automobile when the collision occurred, which resulted in the death of George Hyde, one of the said four students; that by reason of the said collision Julius C. Frappollo has asserted a loss claim in the way of a suit filed against Herbert Greenberg and Frederick Schoenfeld.

As a witness DeWitt Elmore identified an affidavit he had made previously for some purpose on February 20, 1957, concerning the transactions here involved, which affidavit was introduced in evidence without objections. In that affidavit Elmore said in part:

"In December of 1956 I had on my lot a 1953 Ford Tudor Sedan which was in excellent condition and which I *loaned* (emphasis added) to one Dr. Herbert Greenberg while his 1957 Ford which he had purchased from me was awaiting delivery. On or about December 21, 1956 this Ford was involved in an accident in Oklahoma which resulted in its total destruction * * * I have the title to the car."

Again as a witness Elmore testified:

"In other words, I definitely wouldn't have loaned Dr. Greenberg a car as a personal friend, as a business transaction I did."

Elmore testified further in Q. and A. form:

"Q. Mr. Greenberg didn't promise to pay you anything for the use of that 1953 Ford, did he? A. He was to keep that automobile up and furnish all the necessary things such as insurance and so forth to where I wouldn't bear any expense from the time that the car left my lot. It was the same as his automobile and if anything happened to this car I would be paid in full the book price, which I was paid for.

"Q. And he did not promise to pay you anything for the use of that car, did he? A. Not at that particular— not at the particular time he took it but it was figured in my original deal.

"Q. He didn't promise to pay you anything for the use of that car, did he, Mr. Elmore? A. No, sir, not at the time he took it.

"Q. And you voluntarily turned over the use of that automobile to Mr. Greenberg, didn't you? A. Yes, sir.

"Q. And he took it to use with your permission, didn't he? A. Yes, sir."

Concerning the transaction between himself and DeWitt Elmore and particularly concerning the arrangements made for the use of the 1953 Ford by Herbert Greenberg, he himself testified that under their agreement it was not certain that Elmore would need to furnish him an automobile, but in any event, the price of the new automobile would be the same. He also testified that Ellmore told him, "If there is a gap of time, I will loan you an automobile that you can freely use until your car comes in." Greenberg further testified in Q. and A. form on cross examination as follows:

"Q. Doctor, had you acquired this car from DeWitt Elmore? A. How do you mean 'acquired'?

"Q. Well had you gotten it from him? A. He furnished it—he loaned it to me, yes."

"A. That particular car was loaned to me around the very beginning of December."

"Q. Did you agree to pay Mr. Elmore anything for the use of the car? A. No, sir."

"Q. So that in order to get the money, he had to do two things, didn't he, furnish you a new car when it was delivered and keep you in a car in the meantime? Now, isn't that correct? A. Yes, sir, because other dealers could have made immediate delivery. To make up for that he did agree to furnish a car pending delivery, yes."

"Q. So that to earn this $2215.00 from you, he had to keep you in a car until the new one was delivered, didn't he? A. Yes, sir, at no extra charge.

"Q. At no charge other than $2215.00 for the deal, is that correct? A. Which was the price, sir, of the 1957 automobile.

"Q. It was the price of the entire agreement, wasn't it? A. No, sir, I have to insist it was the price of the 1957 automobile because the price would not have been any different had he not agreed to put me in a car. The price was an extremely low price and considerably under what—"

"A. And took the car, yes, sir. But there was no price agreement or anything like that, it was simply that the car had to be returned to him in the same condition which I got it, which are the conditions that you borrow anything under, I mean—"

"Q. Now, for this total of $2215.-00, what did Mr. Elmore agree to do? A. Sell us the 1957 Ford country sedan.

"Q. And what else? A. And loan —and if there—this is an if, if we had

sold our '55 Ford prior to the time he could give us delivery on the new automobile, he would loan us an or a series of automobiles to have us in continuous use of an automobile until ours came in.

"Q. So for the $2215.00 he was to furnish you two things, one, a new car on delivery; two, the use of some car until that one was delivered, is that correct? A. A contingent use if we still didn't have our '55 Ford, yes, sir."

Greenberg's wife, Mrs. Beverly Greenberg, who was present and heard the transactions between her husband and Elmore, testified there was no rental agreement but the Ford in question was loaned to her husband by Elmore.

Because of the evidence cited herein and other evidence of like import found in the record, it is clear that the record does not support the contentions made by appellants to the effect that the evidence conclusively shows that the automobile being used by Herbert Greenberg at the time of the collision had been rented from DeWitt Elmore Motors. If the contrary was not conclusively established by the evidence, there was an additional fact issue raised which was not submitted to the jury and not requested and since no objections or exceptions were made because such issue was not submitted and since no written findings were requested or made by the trial court concerning this omitted matter, such omitted issue must be deemed by us as having been found by the trial court in such a manner as to support the judgment rendered. Rule 279, Texas Rules of Civil Procedure; Anderson Furniture Co. v. Roden, Tex.Civ.App., 255 S.W.2d 345, 357; Hurst v. Webster, Tex.Civ.App., 252 S.W.2d 793, 795; Jordan v. Collier, Tex.Civ.App., 223 S.W.2d 544, 547; Willeke v. Bailey, 144 Tex. 157, 189 S.W.2d 477. The question raised being a vital one urged by all parties, it must be concluded that there exists an implied finding made by the trial court to the effect that the automobile in question was not rented to Greenberg by Elmore and there being ample evidence in the record to support such implied finding, appellants' points to the contrary are all overruled and the judgment of the trial court is affirmed.