BITUMINOUS FIRE & MARINE INSURANCE COMPANY, Appellant,

v.

Frank JONES, Appellee.

No. 154.

Court of Civil Appeals of Texas.

Tyler.

Jan. 6, 1966.

Rehearing Denied Feb. 3, 1966.

Vernon R. Berry, Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for appellant.

R. W. Fairchild, Fairchild & Badders, Vernis Fulmer, Nacogdoches, for appellee.

DUNAGAN, Chief Justice.

This is a workmen's compensation case, tried before a jury. The jury in answer to Special Issues submitted by the trial court found general incapacity both temporary total and permanent partial on which findings judgment was entered by the trial court. The jury also found that the injury

to the left hand did not extend to or affect the left shoulder, but found that the injury to the left hand extended to and affected the plaintiff's general health. Defendant's amended motion for new trial was overruled from which this appeal results. The appellant has brought forward 27 Points in which it complains the trial court committed error. Appellant by its first 12 Points contends that the trial court erred in rendering judgment based on the jury's answers to Special Issues Nos. 4, 7, 11 and 27: (1) because there is no evidence; (2) because the evidence is insufficient; (3) and because the jury's findings on said issues are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.

The jury found in response to Special Issue No. 4 that plaintiff, Frank Jones, sustained total incapacity as a natural result of the injury; to Special Issue No. 7 that Frank Jones sustained or will sustain partial incapacity as a natural result of the injury; to Special Issue No. 11 that the injury to Frank Jones's left hand extended to and affected his general health thereby causing disability; and to Special Issue No. 27 that the average weekly wage earning capacity of plaintiff Jones during the period of partial loss of use of his left hand was $25.00 per week.

Frank Jones, the plaintiff in the court below, and appellee in this court, testified that on the occasion of his injury, he was standing on a table using with both hands an iron bar to pry loose a log which had hung in the splitter. The bar slipped out and he slipped and fell, hitting the "rack" hard with his left shoulder, left knee, left hand and arm. At first it sort of deadened his arm and hand. Then the left hand hurt. He worked on for about an hour and a half, and by that time his whole left hand was swollen and his left arm was hurting all up into his shoulder and neck. Ever since the injury there has been a bruise or discoloration on his left shoulder. He had no trouble before the injury with his left shoulder, the left side of his neck or his left arm and hand.

He was paid compensation benefits for five or six weeks. Then he drew unemployment compensation for thirteen weeks. During the five or six weeks he drew workmen's compensation benefits and the thirteen weeks he drew unemployment benefits, he did no work.

He further testified that he had no way of supporting himself and his family except by working. That he has worked because he has had to work in order to eat. Working causes increased pain in his shoulder and neck. After the eighteen or nineteen weeks during which he drew workmen's compensation benefits and unemployment compensation, he did perform some work.

He worked two or three days picking beans in which he used his right hand. He helped pull the head off a motor but he just used his right hand, not his left. He worked for a week in helping put a motor back into an automobile in which he used the left forefinger and thumb on his left hand when necessary. He did some welding also, but just used his right hand. There was other part-time work enumerated, but in all he only used his right hand.

He also testified that his left arm, left hand, left shoulder and his neck have never been free of pain since he fell. The pain in his arm, shoulder and neck is a sharp, nagging pain which stays there all of the time. The pain in his arm, hand, shoulder and neck got worse. There was nothing he could do to make a living that would not cause increased pain in his shoulder and neck. His left hand has been swollen ever since he got hurt and was swollen at the time of the trial. When he uses his left hand a lot, it swells even more. He can't bend three of the fingers on the left hand; they are numb. He can work his thumb and forefinger on his left hand, and he tries to use them as much as he can, but he can't grip anything with those two fingers and if he presses with them, it causes pain to go up his arm and into his shoulder and neck.

He testified further that before he sustained the injury, he weighed 138 pounds. Today he weighs only 120 pounds. He is not as strong as he was, and he can't get around like he used to; he is slower. His appetite is not too good; because of the pain, he does not sleep well at night.

The plaintiff Jones was corroborated by other witnesses in regard to him using his right hand when he was working and did not use his ·left hand except perhaps to sometime steady an object or hold it in place.

Witness Alton Hicks testified that he was working for Norris Fence Company when Jones was injured. Before his injury, Jones appeared to work all right as a normal person. He was about four feet from Jones when he was hurt. Jones was trying to break a jam log loose from a saw with a bar. Jones was upon the table. The bar slipped and Jones fell against the machine. Jones hurt his hand, and the way he fell he had to strike the bar with his shoulder. That afternoon Jones complained of his hand, arm and shoulder. He could see Jones's hand was swollen. Since his injury, he has asked Jones every time he has seen him about his condition, and Jones has shown him his hand, which on each occasion was still swollen, and Jones said his arm hurt him all the way to the shoulder. He has seen a bruised place on Jones's shoulder. He does not remember whether it was the right or left shoulder.

Witness J. C. Matthews testified that Jones is not as heavy as he was a year and a half ago. He is not as active as he was then, either; he is slower. Within the last year and a half, he has called on Jones to do some mechanic work in a valve job on a Chevrolet. Jones used just one hand. He kept Jones on a part of a day and he paid him a couple of dollars just to give him something for the time he was there. He testified that Jones's work was not satisfactory.

Appellee's (Frank Jones) wife testified that Jones worked hard before he got hurt and she never knew him to complain before he got hurt of his left hand, left arm or neck, or to have sleepless nights or to take medicine.

The night of the day Jones got hurt while working for Norris Fence Company, she saw him when he got home. She saw a little spot of blood on the left shoulder of his shirt and when he took the shirt off, she saw a bruised place on his left shoulder and it wasn't there before that day. Jones's left hand was swollen and it has been ever since. She said Jones complained of pain in the left side of his neck and in his shoulder, left arm and left hand.

She further testified that Jones takes medicine every day all through the day. That she uses warm water and Epsom salt, alcohol rub and deep heat on Jones's neck, shoulder, arm and hand. She does this every day and sometimes more than once a day. Jones's left hand seems colder than his right hand. After Jones got hurt, he started losing weight.

Dr. Mahon testified that an injury can be serious and permanent without a fracture. Pain in any part of the body can, if long endured, affect a person's general health and strength, interfere with his sleep and rest, and impair his appetite.

It has been held in this state that the factual testimony of the claimant alone, or other lay witnesses, will support a jury finding of total or partial incapacity, even though such lay testimony is contradicted by the testimony of medical experts. The Travelers Insurance Company v. Wade, 373 S.W.2d 881, (Tex.Civ.App.) 1963, writ refused, n. r. e.

■▬ It was the province of the jury, as the trier of the facts, to pass upon the credibility of witnesses and the weight to be given their testimony. The jury had a right, and apparently exercised it, to reject the testimony of appellant and give credence to that given by the witnesses for appellee. Martin v. J. S. Hunt Lumber Co., 180 S.W.2d 956, (Tex.Civ.App.) 1944,

n. w. h.; Schwab v. Stewart, 387 S.W.2d 939, (Tex.Civ.App.) 1965, writ refused, n. r. e.; 390 S.W.2d 752.

 We think the evidence in this case is sufficient to support the jury's findings to Special Issues 4, 7, 11 and 27 and accordingly appellant's Points 1–12 are overruled.

 In considering appellant's contention that the jury's answers to Special Issues 4, 7, 11 and 27 were so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust requires us to weigh and consider all the evidence in the case and set aside the verdict and remand the cause for a new trial if we consider the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660.

We have studied the statement of facts carefully and we cannot say in applying the rules just announced that the jury's answers to these issues were so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

Appellant alleges in Points 13 and 14: (1) the trial court erred in rendering judgment based upon the jury's answers to Special Issue No. 4 which found that the plaintiff sustained total incapacity and Special Issue No. 7 which found that the plaintiff sustained partial incapacity to his body generally because there is a fatal conflict between the jury's answers to Special Issues Nos. 4 and 7 and the jury's answer to Special Issue No. 10 wherein the jury found that the injury to the plaintiff's left hand did not extend to and affect the plaintiff's left shoulder producing disability; (2) the trial court erred in rendering judgment based upon the jury finding in answer to Special Issues Nos. 4 and 7 finding incapacity to the body generally which answers are in conformity with the jury's answer to Special Issue No. 11 whereby the jury found the injury to the left hand extended to and affected the general health of the plaintiff, but which answers are in fatal conflict with the jury's finding in answer to Special Issue No. 10 that the injury to the left hand did not extend to and affect the plaintiff's left shoulder thereby producing disability.

 We have heretofore found that the finding of the jury in response to Special Issue No. 11 that the injury to Jones's left hand extended to or affected the general health, thereby causing disability is supported by ample evidence and is not so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. This finding affords, therefore, an additional basis for the findings of general, total and partial incapacity in Issues 4 and 7. There is no irreconcilable conflict in the jury's finding to Special Issues Nos. 10 and 11.

 It is settled that any apparent conflict in a jury's answer to Special Issues submitted to them must be reconciled, if this can reasonably be done in the light of the facts in the particular case, the pleadings, the evidence, the manner in which the issues were submitted, and in view of the other finding when considered as a whole. State Nat. Bank of Houston v. Woodfin, 146 S.W.2d 284, (Tex.Civ.App.) 1940, err. ref.; Walker v. Houston Electric Co., 155 S.W.2d 973, (Tex.Civ.App.) 1941, err. ref.; Thompson v. Railway Express Agency, 206 S.W.2d 134, (Tex.Civ.App.) 1947, writ refused, n. r. e.

Applying this rule, the finding of the jury to Issue 11, under the evidence, must be deemed to reflect the jury's view that the injury to Jones's left hand affected his general health, thereby causing disability through the effect of the constant pain in the left hand upon his general nervous system, which in turn caused sleeplessness, loss of appetite, loss of weight, and loss of strength, such effect upon his body generally producing disability.

Issues 10 and 11 are not irreconcilable conflict under the test of Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222

S.W.2d 985. The inconsistency, if there is one, is not material. If we disregard the answer to Issue No. 10, plaintiff is entitled to a judgment for a general injury; and if we then disregard the answer to Issue No. 11, plaintiff is still entitled to a judgment for general injury under Issues 1, 4 and 7. There is no fatal conflict. See also Bradford v. Arhelger, 161 Tex. 427, 340 S.W.2d 772.

Appellant next complains in Points 15 and 16: (1) the trial court erred in rendering judgment based upon the jury's findings on Special Issues Nos. 7, 8 and 9 wherein the jury found that the plaintiff sustained partial incapacity to his body generally, that it commenced on January 1, 1963, and that its duration was permanent because there is no finding by the jury of any wage earning incapacity on the part of plaintiff during such period of partial incapacity; and (2) the trial court erred in rendering judgment based on the jury's finding to Special Issue No. 27 wherein the jury found that the average weekly wage earning capacity of plaintiff during the period of partial loss of use of his left hand was $25.00 per week, because the jury's finding with regard to wage earning capacity during the partial loss of the use of left hand had no relevancy of materiality and could not form the basis for the rendition of a judgment on such wage earning capacity during partial disability to the body generally.

Special Issue No. 27 was submitted to the jury to be answered if the jury answered Special Issue No. 23 "yes." Issue No. 23 inquired whether Frank Jones sustained a partial loss of the use of his left hand as a natural result of the injury of November 2, 1962. Having answered Special Issue 23 "yes" the jury answered Issue 27 "$25.00."

Issue No. 27 inquired as to the plaintiff's "average weekly wage earning capacity." In response to Special Issues Nos. 7, 8 and 9, the jury found: (1) that Jones sustained partial incapacity as a natural result of the injury; (2) that such partial incapacity

began on January 1, 1963; (3) and that such partial incapacity was permanent.

The jury also found in response to Special Issues 16, 17 and 18: (1) that Jones sustained a partial loss of the use of his left arm as a natural result of the injury; (2) that such partial loss of the use of the left arm began on January 1, 1963; (3) and that such partial loss of the use of the left arm was permanent.

Appellant did not object to the fact that Issue No. 27 was conditioned on a "yes" answer to Issue No. 23 when it should have been conditioned on a "yes" answer to Issue No. 7, which issue inquired as to whether Jones sustained partial incapacity as a natural result of the injury of November 2, 1962.

It would not seem to be material as to whether the jury understood "such partial incapacity" as used in Issue 27 to refer to the partial incapacity found in Issue 7 or that found in Issue 23. The commencing period and termination time in each are the same. It appears there was no objection to the definition of "partial incapacity" or to "average weekly wage earning capacity" as used in the charge.

◼ Moreover, appellant did not object to the court's omission from the charge of an issue inquiring as to his "wage earning capacity" during the period of partial disability as found in Issues Nos. 8 and 9. The omitted issue is only an element of one ground of recovery by plaintiff and on appeal it is presumed that the trial court found the issue in such a manner as to support the judgment. Rules 279 and 274, Texas Rules of Civil Procedure; Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298; Pan American Fire & Casualty Company v. Greenberg, 326 S. W.2d 274, (Tex.Civ.App.) 1959, error refused, n. r. e.; General Accident Fire and Life Assurance Corp. v. Murphy, 339 S.W. 2d 392, (Tex.Civ.App.) 1960, error refused, n. r. e.; Sinclair Refining Company v. Winder, 340 S.W.2d 503, (Tex.Civ.App.)

1960, error refused, n. r. e.; Texas Employers' Insurance Association v. Texas Steel Erection Company, 344 S.W.2d 457, (Tex.Civ.App.) 1961, error refused, n. r. e.; Texas Employers' Insurance Ass'n v. Neuman, 379 S.W.2d 295, (S.Ct.) 1964.

On voir dire examination of the jury panel, appellee's counsel Fulmer stated that due to lack of finances and so forth we have not sent the plaintiff, Frank Jones, to a doctor. Immediately thereafter in the absence of the jury panel the defendant duly and timely filed its motion for mistrial based on the statement by plaintiff's counsel to the jury panel. The trial court overruled defendant's motion for mistrial. Immediately after the ruling of the court, appellant moved the court to instruct counsel for the plaintiff to desist from any further reference to the reason why he does not call a doctor or does not plan to call a doctor and further requested the court to instruct the jury panel not to consider for any purpose the last remarks of counsel. The trial court refused to so instruct the jury.

Thereafter, during the offering of testimony, plaintiff's counsel while questioning the plaintiff on direct examination asked him:

"Q All right. Now, did you have any money to go to doctors?

"A No, sir, no money."

Immediately, counsel for the appellant moved the court to declare a mistrial for the reason that it brings the matter in issue before this court and before this jury and has no basis in this record, which is contrary to the record evidence in this case and the law.

The court said: "All right. The Court is going to sustain the objection. The Court is not ruling on the motion for mistrial, but the Court is going to sustain the objection to the question. The question has heretofore been answered by the witness. Therefore, the Court is going and does instruct the jury that you will disregard the answer to this question for all purposes. You will not consider it for any purposes in your deliberations in this case."

Appellant by its Points 17, 18 and 19 contends that the trial court erred in overruling defendant's motions for new trial because of the unsworn testimony by counsel Fulmer on voir dire examination and the eliciting of testimony from the plaintiff that he has not been to see a doctor because he does not have the money.

Appellant in support of its contention cites Traders & General Insurance Company v. Derrett, Tex.Civ.App., 340 S.W.2d 305, error refused, n. r. e., wherein the court held that appellee's counsel in his argument mentioned the $350.00 fee appellant was paying Dr. Wilcox for attending court and then arguing, "I haven't got that kind of money to pay those kind of prices for doctors" was comparing the relative wealth of the parties and giving unsworn testimony. The court said this kind of argument is improper. Also cited is Texas Co. v. Gibson, 131 Tex. 598, 116 S.W.2d 686, (S.Ct.) wherein the court held that argument contrasting the wealth and power of the defendant with plaintiff's poverty in a statement to the jury should not render a verdict for the plaintiff because the corporation had all the money and was one of the biggest corporations in the country and because the plaintiff had no money was reversible error.

We do not believe these cases to be in point because the statement of plaintiff's counsel to the jury panel or the testimony elicited from plaintiff in the case at bar, "that he did not go to see a doctor because he did not have any money" was not an attempt to compare the poverty-stricken condition of Jones with the financial condition of the defendant insurance company.

Moreover, the lump sum issue was in this case and was submitted to the jury. Much evidence was introduced to show Jones's poverty-stricken condition. Upon this issue, the court admitted testimony of Jones that he had seen no other doctor for his injuries except Dr. Evans and Dr. Mahon because he did not have the money to go to a doctor.

**584**

In view of the fact that on the issue of lump sum the evidence shows the poverty-stricken condition of Jones in testimony identical to that of which appellant complained was admitted, plus the fact that Jones testified on several occasions in the course of the trial that he had to work in order to eat, we do not believe it reasonably probable that the matter of which appellant complains in its Points 17 through 19 caused the rendition of an improper verdict or judgment. Rule 434, Texas Rules of Civil Procedure; Appellate Procedure in Texas, "Harmless Error," Section 17.12(2) and (3).

We have considered the Points of Error not discussed in this opinion and do not believe they constitute reversible error. Therefore, they are overruled.

· Finding no reversible error, the trial court's judgment is affirmed.