**CITY OF DENISON et al., Appellants,**

v.

**JENNINGS FURNITURE COMPANY, Inc., Appellee.**

**No. 17011.**

Court of Civil Appeals of Texas.

Dallas.

Feb. 2, 1968.

Rehearing Denied Feb. 23, 1968.

Charles H. Gullett, Robert Doss, Denison, for appellants.

Jack G. Kennedy, Sherman, for appellee.

CLAUDE WILLIAMS, Justice.

Jennings Furniture Company, Inc. brought this action against the City of Denison, Texas and the Denison Peanut Company seeking a mandatory injunction, and in the alternative, damages allegedly sustained to its property by virtue of the construction of a building across an alley in Denison. Plaintiff alleged that its property had a fair market value of $51,530 prior to the closing of the alley by the construction of the building and that the value afterwards was only $26,530. Following jury trial a special issue verdict was returned supporting plaintiff's theory of recovery. In answer to Special Issue No. 9 the jury found that the fair market value of plaintiff's property prior to the construction of the building in question was $43,044. In answer to Special Issue No. 10 the jury found that the fair market value of the property following such construction was $33,218. Based upon such verdict the court

denied the request for mandatory injunction for the removal of the building but awarded judgment in favor of plaintiff and against the defendant Denison Peanut Company in the sum of $9,826. Defendants appeal. We affirm the judgment.

## OPINION

Appellants' contention that the trial court's judgment should be reversed is contained in two points of error in which it is asserted that the jury having expressly, or impliedly, agreed to be bound in advance to quotient answers to questions submitted on valuation, the trial court committed error in not granting a new trial.

In support of their contention concerning jury misconduct appellants bring forward testimony of eleven jurors (one of the jurors having died since the trial) given at the hearing of the motion for new trial.

We have carefully read and evaluated the evidence given by each of the jurors. It would serve no useful purpose to extend this opinion by reproducing the testimony of the various jurors but we content ourselves with the following summarization.

It is without dispute that when the jury arrived at that part of their deliberation of the special issue contained in the court's main charge dealing with the amount of damages to appellee's property the jurors generally agreed that a good way to obtain a consensus of damage figures would be to have each juror write his idea upon a piece of paper, hand it to the jury foreman, and allow him to add same and divide the result by 12. According to practically all of the jurors this procedure was followed. When the jurors had written their respective estimates of damages in answer to Special Issue No. 9 the foreman added all of the twelve figures, divided the result by 12, and found the answer to be $43,044. The same procedure was followed with reference to Special Issue No. 10 and this figure turned out to be $33,218. The foreman of the jury, as well as a number of other

jurors, testified that at this point a vote was taken and that it was unanimously agreed that these two figures should be inserted as answers to Special Issues Nos. 9 and 10. A majority of the jurors testified positively that the vote on the issues themselves came after, and not before, the mathematical process which developed the figures.

As to the reason why the mathematical process was utilized in the first place, it seemed fairly obvious that the jurors were having difficulty in getting started on the proper answer to be given the two issues on damages and it was generally decided that this process would be a "fair" or "democratic" method to reach a common ground of understanding. In other words, it was decided that this would be a good method to reach a starting point.

As to the question of whether there was an express or implied agreement entered into between the jurors whereby they would be bound by the results of the quotient amount the evidence is conflicting. One or more jurors testified that there was such an agreement among the jurors which was made prior to determination of the amount. However, these jurors varied their testimony somewhat on cross-examination. The foreman of the jury, as well as the majority of the jurors, testified positively and unequivocally no such prior agreement had been entered into between the jurors which would bind them to receive and accept the results of the mathematical calculation. Each of these jurors was firm in his testimony that the initial mutual assent to follow this procedure was nothing more than an effort to get started on the eventual results and that after the figures had been ascertained it was then, and only then, that the vote was taken and that each of the jurors agreed that such would be the verdict.

The law controlling the question of improper or quotient verdicts of juries is set forth in 57 Tex.Jur.2d, § 401, pp. 33, 34, as follows:

"It is improper for jurors to agree either expressly or by implication, to assess damages * * * in terms of the result reached by adding the amounts favored by each juror and dividing the total by the number of jurors. A verdict arrived at by this method is known as a quotient verdict, and, as such, it is invalid.

"The method of computation described may be resorted to, however, where the figure arrived at is meant to serve only as a basis for further discussion, and the jurors have not agreed to be bound by the result. This is true even though the average figure is subsequently agreed on as the amount recoverable * * *."

Prior to the adoption of Rule 327, Vernon's Texas Rules of Civil Procedure, there was a presumption of prejudice from jury misconduct. In order to dispel any doubts about its attitude on the rule of presumption of prejudice the Supreme Court of Texas promulgated Rule 327, T.R.C.P., which provides:

"Where the ground of the motion is misconduct of the jury * * * the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, * * * be material, and it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

The Supreme Court, in Barrington et al. v. Duncan et al., 140 Tex. 510, 169 S.W.2d 462 (1943) laid down the guidelines for proper application of this rule, in the following language:

"A reading of the above rule will disclose that its effect is to abolish the prior

rule of reasonable doubt, and substitute therefor a rule which imposes upon the party asserting misconduct the burden not only of proving by a preponderance of the evidence that such misconduct occurred, but also of showing that such misconduct probably resulted in injury to him. If the evidence is conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court either way on that question should be accepted as final. When misconduct is established, the question of injury is one of law for the reviewing court. Under the above-quoted rule both the trial and reviewing courts have the right to view the matter in the light of the entire record. By the entire record we mean the evidence heard on the motion presenting misconduct, the evidence on the main trial, and any and all other parts of the record which may throw light on the question of injury."

In a more recent opinion our Supreme Court in State of Texas v. Wair, 351 S.W. 2d 878 (1961), again stated the rule concerning judicial review of jury misconduct, as follows:

"The trial court's refusal to grant a new trial upon an express or implied finding of no occurrence of jury misconduct is ordinarily binding on the reviewing courts and will be reversed only where a clear abuse of discretion is shown. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943); Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62 (1945); Saladiner v. Polanco, Tex.Civ.App., 160 S.W.2d 531 (1942, error refused); Thompson v. Railway Express Agency, Tex.Civ.App., 206 S.W.2d 134 (1947, n. r. e.); Martin v. Shell, Tex.Civ.App., 262 S.W.2d 564 (1953, no writ); Morgan v. State, Tex. Civ.App., 343 S.W.2d 738 (1961, ref., n. r. e.)."

To the same effect see Brawley v. Bowen, 387 S.W.2d 383 (Tex.Sup.1965).

■ Applying these established rules to the factual situation presented by this record we find no difficulty in concluding and holding that no jury misconduct occurred. The evidence adduced before the trial judge was indeed conflicting but his implied finding that no misconduct occurred is binding upon us.

■ Moreover, appellants have not brought forward a point of error, nor have they demonstrated in any other fashion, the existence of the second necessary element, namely, probable harm. In this connection there is no statement of facts on the merits of the case so we must presume that the evidence adduced during the trial of the case supports the answer of the jury to both Special Issues 9 and 10. In fact, appellants make no contention that the answers of the jury to the damage issues were excessive or not supported by the evidence.

We have examined the record before us, as we are required to do by the rule announced by the Supreme Court, and we resolve the question of law concerning injury by holding that no injury is apparent.

Appellants' points of error are overruled and the judgment of the trial court is affirmed.